Jonathan O. Hafen (6096)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
jhafen@parrbrown.com

R. Jeremy Adamson (12818)
Taylor J. Hadfield (17224)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, UT 84101
Telephone: (801) 994-4646
Fax: (801) 758-7436
jadamson@kba.law
thadfield@kba.law

*Attorneys for Plaintiff*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| LISA SPIEGEL, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> IMONEY TOOLS, LLC, a Utah limited liability company and dba TRANONT, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 2:24-cv-00944 <br><br> Judge: _____ <br><br> **Tier 3** |

Plaintiff Lisa Spiegel ("**Lisa**" or "**Plaintiff**") hereby complains against defendant iMoney Tools, LLC dba Tranont ("**Tranont**" or "**Defendant**") and allege as follows:

## INTRODUCTION

1. This action arises from Tranont's flagrant disregard for the health of its customers

after it was put on notice of the toxicity of its products.

2. Specifically, Tranont manufactured, advertised, and sold products that it knew or should have known contained dangerous levels of toxins.

3. This action is not the first time Tranont has been confronted with the toxicity of its product—just last year it settled a case in California arising from that toxicity and agreed that it would maintain rigorous testing standards to ensure toxins were not present in its products.

4. Despite previous lawsuits and awareness of the dangers its product contained, Tranont persisted in marketing and selling its products to individuals across the United States—including Plaintiff.

5. Plaintiff was poisoned by extreme amounts of heavy metals in Tranont's product.

## PARTIES JURISDICTION AND VENUE

6. Plaintiff Lisa Spiegel is an individual residing in Winnetka, California.

7. Defendant iMoney Tools, LLC is a Utah limited liability company with its principal place of business in Utah County, Utah.

8. Each member of Defendant iMoney Tools, LLC is a citizen of the state of Utah.

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiff seeks damages exceeding $75,000, exclusive of interest and costs, and because Plaintiff is diverse from all members of Tranont.

10. This Court has personal jurisdiction over Tranont because Tranont is a limited liability company registered in Utah with its principal place of business in Utah County, Utah.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Tranont operates in Utah County and is at home in this venue.

## GENERAL ALLEGATIONS

*Tranont's Multilevel Marketing Business Model.*

12. Tranont is a multi-level marketing company that offers a variety of products and services purportedly aimed at promoting health, wellness, and financial well-being.

13. Tranont's product line includes dietary supplements, skincare products, essential oils, and financial services.

14. Tranont markets its products as "safe and effective," and it claims that, when those products are used as directed, they will "help create a balanced, healthy environment in the belly."

*Tranont Already Admitted Fault in a California Lawsuit and Agreed to Implement Rigorous Testing of its Product.*

15. Tranont was sued in California in 2021 by a non-profit seeking relief under California's Health and Safety Code (the "**California Lawsuit**").

16. Specifically, Plaintiff Environmental Research Center, Inc. ("**ERC**"), a non-profit corporation, brought suit against iMoney Tools LLC, individually, and dba Tranont for numerous violations of provisions of the California Health and Safety Code section 25249.5 e*t seq*.

17. ERC alleged that a number of products manufactured, distributed, or sold by Tranont contained lead and/or mercury—chemicals listed under the California Health and Safety Code as carcinogens and/or reproductive toxins.

18. Under California law, products sold to consumers with those chemicals require a warning, and Tranont failed to meet this requirement.

19. The products subject to the lawsuit were: (1) Tranont Nourish GOS Prebiotic Meal Replacement Coconut Cream (lead), (2) Tranont Nourish GOS Prebiotic Meal Replacement Brown Batter (lead), (3) Tranont Boost (lead), (4) Tranont Glow Advanced Type 1 Collagen with

3

Superfood Antioxidant Support Strawberry Banana (mercury), and (5) Tranont Glow Advance Type 1 Collagen with Superfood Antioxidant Support Orange Cream (mercury) (the "**Tranont Products**").

20. To resolve the claims raised against it, in March 2023, Tranont entered into a Stipulated Consent Judgment in the California State Superior Court (the "**Settlement**").

21. Tranont is now permanently enjoined from manufacturing, distributing, or selling in California, any Tranont Product that exposes a person to a "Daily Lead Exposure Level" of more than 0.5 micrograms of lead per day and/or "Daily Mercury Exposure Level" of more than 0.3 micrograms of mercury per day unless it meets the warning requirements under Proposition 65.

22. Critically, Tranont is also required to "arrange for lead and mercury testing of Tranont Products at least once a year for a minimum of five consecutive years by arranging for testing of three (3) randomly selected samples of each of the Products, in the form intended for" sale or distribution to a consumer in California.

*Plaintiff Experienced Significant Physical and Mental Health Issues after Ingesting Tranont Products as Directed.*

23. Lisa experienced significant health impacts directly attributable to the consumption and use of Tranont Products.

37. In 2022, Lisa began using Tranont Products, purchasing the Gold Pack for $650.

38. She participated in "shake challenges," consuming four bottles per month and taking two bottles of Glow monthly. Following the labeled instructions, Lisa typically consumed (1) Nourish shakes; 2 bottles a day, (2) Mojo; 1 scoop a day, (3) Zest, (4) Enrich; 3-6 capsules a day, and (5) Optimize; 3-6 capsules a day.

39. Negative side effects emerged in late 2022.

40. Lisa experienced hair thinning, had to triple her intake of Enrich for the same effect, and gained weight despite no dietary changes. She also suffered from depression. Her thyroid antibody levels increased, necessitating a higher dose of her medication.

41. A friend mentioned a lawsuit against Tranont due to lead contamination. This prompted Lisa to reduce her usage of some products, particularly Glow, by half and stop drinking the shakes altogether in January. By April 2023, she ceased using all the Tranont Products, due to safety concerns after test results confirmed their danger.

42. Lisa consulted a doctor who performed blood work for thyroid levels. She ordered a hair analysis for heavy metals kit, which she conducted herself. The tests revealed high levels of heavy metals in her body, especially lead and aluminum.

43. On information and belief, the Tranont Products caused her diagnosis of heavy metal poisoning and health decline, which reactivated her thyroid antibodies and caused hair loss.

44. Financially, Lisa has incurred out-of-pocket expenses for labs, office visits, supplements, and medication, as she was unable to pay for health insurance. The impact on her life has been profound.

**FIRST CLAIM FOR RELIEF**
**(Strict Liability for Design Defect, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

45. Plaintiff incorporates herein all preceding allegations set forth above.

46. Tranont, individually and acting through its employees, agents, and third parties and in concert with each other, is liable to Plaintiff for violations of the Utah Product Liability Act.

47. Tranont manufactured, placed into the stream of commerce, distributed, and promoted its Tranont Products to consumers across the country.

48. An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

49. The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

50. Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

51. Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

52. The deleterious side effects of Tranont Products experienced by Plaintiff, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to joint pain, headaches, muscle cramps, hair loss, weight gain, and hormonal imbalances.

53. The adverse side effects experienced by Plaintiff after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

54. The presence of heavy metals in the Tranont Products was a design defect.

55. The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

56. The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

57. The Tranont Products were additionally dangerous because of the deleterious side effects possible after the consumption of heavy metals.

58. The design defect of heavy metals in the Tranont Products was present at the time the product was sold to Plaintiff.

59. Plaintiff purchased Tranont Products from Tranont.

60. Plaintiff's use of Tranont Products was the cause of injury to Plaintiff.

61. As a result, the defective condition of the Tranont Products caused Plaintiff's injuries.

**SECOND CLAIM FOR RELIEF**
**(Strict Liability for Manufacturing Defect, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

62. Plaintiff incorporates herein all preceding allegations set forth above.

63. Tranont, individually and acting through its employees, agents, and third parties and in concert with each other, is liable to Plaintiff for violations of the Utah Product Liability Act.

64. Tranont manufactured, placed into the stream of commerce, distributed, and promoted its Tranont Products to consumers across the country.

65. An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

66. The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

67. Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

68. Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

69. The deleterious side effects of Tranont Products experienced by Plaintiff, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to joint pain, headaches, muscle cramps, hair loss, weight gain, and hormonal imbalances.

70. The adverse side effects experienced by Plaintiff after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

71. The presence of heavy metals in the Tranont Products was a manufacturing defect.

72. The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

73. The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

74. The Tranont Products were additionally dangerous because of the deleterious side effects possible after the consumption of heavy metals.

75. The Tranont Products were unreasonably dangerous because the products were different from how the manufacturer intended to make them, meaning the manufacturing process contaminated the Tranont Products with heavy metals unintentionally.

76. The manufacturing defect of heavy metals in the Tranont Products was present at the time the product was sold to Plaintiff.

77. Plaintiff purchased Tranont Products from Tranont.

78. Plaintiff's use of Tranont Products was the cause of injury to Plaintiff.

79. As a result, the defective condition of the Tranont Products caused Plaintiff's injuries.

### THIRD CLAIM FOR RELIEF
**(Strict Liability for Failure to Warn, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

80. Plaintiff incorporates herein all preceding allegations set forth above.

81. Tranont, individually and acting through their employees, agents, and third parties and in concert with each other, are liable to Plaintiff for violations of the Utah Product Liability Act.

82. Tranont manufactured, placed into the stream of commerce, distributed, and promoted their Tranont Products to consumers across the country.

83. Tranont was put on notice of that lead and/or mercury was discovered in Tranont Products when ERC filed a complaint against them on December 12, 2022.

84. In any event, Tranont should have reasonably known that the Tranont Products contained dangerous levels of heavy metals prior to 2021.

85. Tranont refused to inform Plaintiff's, sales associates, and consumers of this discovery and continued to sell the Tranont Products to all those listed.

86. Due to Tranont's improper marketing and advertising of the Tranont Products and the inadequacy of its warnings, the Tranont Products were and are unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary and prudent buyer, consumer, or user of the Tranont Products in the community.

87. An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

88. The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

89. Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

90. Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

91. The deleterious side effects of Tranont Products experienced by Plaintiff, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to joint pain, headaches, muscle cramps, hair loss, weight gain, and hormonal imbalances.

92. The adverse side effects experienced by Plaintiff after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

93. The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

94. The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

95. The Tranont Products were additionally dangerous because of the deleterious side

effects possible after the consumption of heavy metals.

96. Tranont failed to provide adequate warnings regarding the presence of lead and/or mercury in Tranont Products, despite knowing or having reason to know of the hazards.

97. Tranont's lack of an adequate warning made the Tranont Products defective and unreasonably dangerous.

98. Health supplements, such as the Tranont Products, do not and should not contain life-altering heavy metals, and therefore, are not a foreseeable risk. A warning that the products contained lead and/or mercury could have prevented the foreseeable risks associated with ingesting such heavy metals.

99. Tranont's lack of an adequate warning was the cause of the Plaintiff's injuries.

## FOURTH CLAIM FOR RELIEF
### (Negligence)

100. Plaintiff incorporates herein all the preceding allegations set forth above.

101. Tranont owed Plaintiff a duty of care as sales associates and consumers of the Tranont Products, because Tranont sold and directed them to consume products that should have been free of toxins or heavy metals.

102. Tranont owed Plaintiff a duty and breached that duty, which caused damages to Plaintiff.

103. Tranont must use ordinary care in warning foreseeable end users about potentially dangerous products that are known or should be known to them and are not readily apparent to end users.

104. Tranont owed Plaintiff a duty because injury to Plaintiff was reasonably foreseeable based on Tranont's conduct, as were the injuries suffered.

105. Tranont further has a duty to exercise reasonable care in the design, manufacture, marketing, and distribution of the Tranont Products.

106. Tranont breached its duty of care to Plaintiff when the Tranont Products were not free of toxins and contained heavy metals, such as lead and/or mercury.

107. Reasonably prudent wholesale distributors would have recognized the risk of heavy metals within the Tranont Products and issued warnings and/or taken protective measures to ensure consumers of the Tranont Product were not injured.

108. On information and belief, Tranont was operating under a GMP certification obtained before significant formula changes and the dismissal of formulators. The company failed to test the Tranont Products for safety, altered ingredients and sourcing to cut costs, and attempted to cover up the problems while denying their existence.

109. All of these acts and omissions caused injury to Plaintiff which injury was reasonably foreseeable and preventable.

110. Tranont was in the best position to prevent the injuries caused to Plaintiff due to its advanced knowledge of the manufacture, distribution, and creation of the Tranont Products.

111. Tranont Products and Tranont's acts and omissions were the actual and proximate cause of Plaintiff's injuries.

112. Plaintiff has suffered extensive physical and financial injuries.

### FIFTH CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability, Violation of Utah Code Ann. §§70A-2-314)

113. Plaintiff incorporates herein all the preceding allegations set forth above.

114. "[A] warranty that goods shall be merchantable is implied in contract for their sale

if the seller is a merchant with respect to goods of that kind." Utah Code Ann. § 70A-2-314(1).

115. Tranont markets itself as a leading producer of products that "helps support healthy digestion, nutrient absorption, and overall wellness[.]"

116. Tranont marketed and sold Tranont Products advertising the health and wellness benefits to Plaintiff.

117. Plaintiff relied on Tranont's representations regarding the quality and uses of Tranont Products and purchased Tranont Products for uses consistent with those for which Tranont marketed Tranont Products. When Plaintiff used Tranont Products as directed, each suffered significant health conditions directly attributable to Tranont Products.

118. The Tranont Products were not fit for the ordinary purpose for which such goods are used. Instead of increasing health benefits as promised by the products, Plaintiff suffered significant health decline because the products contained harmful substances inconsistent with the ordinary purpose for which such goods are used.

119. It was reasonably foreseeable to Tranont that Plaintiff would use Tranont Products in the manner they did.

120. As a direct and proximate result of Tranont Products, Plaintiff has incurred and continue to incur damages including, but not limited to, the medical expenses of Plaintiff and future medical expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and other relief against Defendant as follows:

A. Compensatory damages in an amount to be proven at trial.

B. Consequential damages in an amount to be proven at trial.

C. Punitive damages in an amount to be proven at trial.

D. Attorneys' fees and costs incurred in bringing this action.

E. Pre- and post-judgment interest in an amount to be determined by the Court.

F. Other amounts of damage that is reasonable and necessary under the circumstances.

DATED: December 18, 2024.

**PARR BROWN GEE & LOVELESS, PC**

/s/*Jonathan O. Hafen*
Jonathan O. Hafen
*Attorneys for Plaintiff*

**KUNZLER BEAN & ADAMSON, PC**

/s/*R. Jeremy Adamson*
R. Jeremy Adamson
*Attorneys for Plaintiff*